RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0155P (6th Cir.)
File Name: 03a0155p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 02-5222

ANDRE SCOTT WHEELER,
*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 99-00149—John T. Nixon, District Judge.

Argued: May 1, 2003

Decided and Filed: May 23, 2003

Before: NELSON and COLE, Circuit Judges; ROSEN,
District Judge.*

---

**COUNSEL**

**ARGUED:** Caryll S. Alpert, FEDERAL PUBLIC
DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.
S. Carrie Daughtrey, UNITED STATES ATTORNEY,

---

*     The Honorable Gerald E. Rosen, United States District Judge for the
Eastern District of Michigan, sitting by designation.

Nashville, Tennessee, for Appellee. **ON BRIEF:** Caryll S.
Alpert, FEDERAL PUBLIC DEFENDER'S OFFICE,
Nashville, Tennessee, for Appellant. Debra Teufel Phillips,
UNITED STATES ATTORNEY, Nashville, Tennessee, for
Appellee.

---

**OPINION**

---

ROSEN, District Judge.

## I. *INTRODUCTION*

Defendant/Appellant Andre Scott Wheeler appeals his
sentence imposed following a 2002 guilty plea to possessing
firearms as a convicted felon in violation of 18 U.S.C.
§ 922(g)(1). More specifically, Defendant contends that the
District Court erred in calculating the criminal history points
applicable to his prior sentence for a 1995 felony drug
conviction by failing to exclude from the calculation the
period of incarceration imposed on Defendant as a result of
the revocation of his original community corrections sentence
for the 1995 crime. Because state authorities revoked the
community sentence as a result of the firearms possession
underlying his § 922(g)(1) violation, Defendant contends that
such possession constitutes conduct relevant to the instant
offense, which the sentencing guidelines exclude from the
definition of "prior sentence" for purposes of calculating
criminal history points. Defendant also contends, for the first
time on appeal, that the District Court violated his double
jeopardy rights by imposing multiple punishments for the
same firearms possession.

For the reasons set forth below, we find Defendant's
arguments without merit and AFFIRM the sentence imposed
by the District Court.

## II.  *BACKGROUND*

### A.  *General*

On December 18, 1995, a Tennessee Circuit Court sentenced Defendant to ten years of community corrections supervision following a guilty plea to the felony state charge of possession with intent to sell or deliver cocaine (the "1995 Conviction").[1]  While Defendant was serving this community corrections sentence, local police executed a search warrant at his home in Franklin, Tennessee.  During this March 6, 1999 search, officers discovered multiple firearms in Defendant's possession.  Thereafter, Tennessee authorities revoked Defendant's community corrections sentence and ordered him incarcerated for the "remainder of his ten-year sentence at 30%."[2]

Relying on the firearms found during the March 6 search, federal officials subsequently filed a one-count indictment against Defendant in the United States District Court for the Middle District of Tennessee, alleging a violation of 18 U.S.C. § 922(g)(1).  On January 25, 2002, Defendant pled guilty to this firearms charge, and the District Court turned to sentencing.

### B.  *Sentencing*

#### 1.  *Base Offense Level*

Citing Defendant's two prior felony controlled substance offenses and his possession of multiple firearms, the Probation Department's pre-sentence report recommended a

---

[1] At this time, Defendant's record included an additional felony drug conviction -- namely, a 1992 state class E felony for possession of marijuana with intent to sell.

[2] Defendant received credit for the time he was on community corrections from December 18, 1995 until March 15, 1999.  Thirty percent of the remainder of his initial ten-year sentence resulted in a post-revocation term of imprisonment of approximately two years.

base offense level of 26.  *See* U.S.S.G. § 2K2.1(a)(2) and (b)(2).[3]  Other than granting a three-level reduction for acceptance of responsibility, the District Court accepted the report's recommendation.

#### 2.  *Criminal History*

Turning to criminal history, the pre-sentence report recommended a criminal history category of IV, based on eight criminal history points.  In response, Defendant filed an objection to the assessment of three criminal history points for the 1995 Conviction.

Under the sentencing guidelines, a defendant receives criminal history points for "prior sentences" and recidivist conduct as follows:

(a)  Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
(b)  Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
(c)  Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.
(d)  Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S.S.G. § 4A1.1(a)-(d).

With respect to prior sentences involving the revocation of probation, parole, supervised release, special parole, or

---

[3] Violations of § 922(g)(1) are sentenced under U.S.S.G. § 2K2.1.  *See* Appendix A to the Sentencing Guidelines.  U.S.S.G. § 2K2.1(a)(2) sets a base offense level of 24 if, as in this case, "the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of a . . . controlled substance offense."  Under U.S.S.G. § 2K2.1(b)(2), the base offense level is increased two additional levels if the offense, as in this case, involved three to seven firearms.

mandatory release, the guidelines direct sentencing courts to "add the original term of imprisonment to any term of imprisonment imposed upon revocation," and to use "[t]he resulting total . . . to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable." U.S.S.G. § 4A1.2(k)(1). Relying on § 4A1.2(k)(1), the Probation Department's pre-sentence report added the period of incarceration imposed upon revocation to Defendant's original community sentence for the 1995 Conviction. The resulting total term of imprisonment of more than thirteen months placed Defendant in the three-point category set forth in U.S.S.G. § 4A1.1(a).

Defendant countered that only one criminal history point was appropriate for the 1995 Conviction under U.S.S.G. § 4A1.1(c).[4] In making this argument, Defendant relied on the definition of "prior sentence" in the guidelines, which reads:

> 'Prior sentence' means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. . . . Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of §1B1.3 (Relevant Conduct).

U.S.S.G. § 4A1.2 cmt. n.1.

More specifically, Defendant argued that the possession of firearms underlying the revocation of his community corrections sentence was conduct relevant to his instant § 922(g)(1) offense. Because only prior sentences are considered in calculating criminal history points, and because the guidelines exclude "relevant conduct" from the definition of "prior sentence," Defendant asserted that the District Court should consider only his original community corrections

---

[4]If correct, Defendant's argument would reduce his total criminal history points from eight to six, placing him in criminal history category III rather than IV. *See* U.S.S.G. Ch. 5, Pt. A.

sentence, and not his post-revocation sanction, as a "prior sentence" in calculating his criminal history points for the 1995 Conviction. In effect, Defendant asked the District Court to treat the 1995 Conviction as if it involved two criminal prosecutions resulting in two distinct sentences.

In response, the Government argued that the post-revocation sanction was simply an extension of the original sentence imposed for the 1995 Conviction. Given that this earlier drug offense was unrelated to the instant firearms charge, the Government contended that the term of imprisonment handed down upon revocation was properly treated as part of the "prior sentence" for purposes of calculating the criminal history points for the 1995 Conviction. Agreeing with the Government, the District Court denied Defendant's objection and sentenced him to seventy months incarceration.

### III. *ANALYSIS*

#### A. *Criminal History Calculation*

On appeal, Defendant renews his objection to the assessment of three criminal history points for the 1995 Conviction. We review *de novo* a district court's legal conclusions regarding the application of the guidelines. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000).

The analysis of Defendant's criminal history argument begins with U.S.S.G. § 4A1.2(k)(1), which provides that any term of imprisonment imposed upon revocation is added to the original term of imprisonment for purposes of calculating criminal history points under U.S.S.G. § 4A1.1(a)-(c).[5]

---

[5]Guideline 4A1.2(k)(1) expressly speaks to the revocation of "probation, parole, supervised release, special parole, or mandatory release," not the revocation of a community corrections sentence. The Government contends, without objection from Defendant, that a community corrections sentence is sufficiently analogous to probation to warrant the application of § 4A1.2(k)(1). *See State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (noting that "a community corrections

While this relatively straightforward rule would seem to end the inquiry, Defendant contends that when revocation-triggering conduct also serves as the basis for a separate criminal prosecution, the guidelines' exclusion of relevant conduct from the definition of prior sentence trumps § 4A1.2(k)(1).

Although Defendant's argument may hold some surface appeal, it glosses over the threshold question of whether a post-revocation sanction constitutes a separate sentence, or whether it is merely an extension of or replacement for the original sentence for a crime. In *Johnson v. United States*, 529 U.S. 694, 701, 120 S.Ct. 1795, 1801 (2000), the Supreme Court resolved this question by "attribut[ing] postrevocation penalties to the original conviction." This rule applies even if, as in this case, the acts underlying a revocation are criminal in their own right or the basis for separate prosecution. *See id.* at 700, 120 S.Ct. at 1800. Indeed, the revocation of probation does not even amount to a stage of criminal prosecution. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759-1760 (1973). Thus, regardless of the underlying conduct that brings about the revocation of a community corrections sentence, any and all post-revocation sanctions constitute part of the sentence for the original crime of conviction, even where the facts underlying the revocation are precisely the same as those providing the basis for conviction in the instant case.

In light of *Johnson*, we find no basis in law to support Defendant's criminal history argument. When the State of Tennessee placed Defendant on community corrections for the 1995 Conviction, he was required to conduct himself consistent with the terms of his release. State authorities subsequently determined through a revocation proceeding that he failed to do so and, as a result, effectively annulled his original community sentence and replaced it with a term of

---

sentence, as a practical matter, closely resembles that of probation"). We agree.

imprisonment that logically flowed from, and was an extension of, his original sentence for the 1995 Conviction. Accordingly, the fact that Tennessee authorities revoked Defendant's community corrections sentence for the same firearms possession that led to his § 922(g)(1) conviction does not, for criminal history purposes, sever the conduct from the original state sentence attributable to his 1995 Conviction.

Providing further support for this conclusion is the fact that revocation proceedings and independent criminal prosecutions serve entirely different purposes. As cogently summarized by the Seventh Circuit:

> A parole revocation proceeding is an administrative proceeding designed to determine whether a parolee has violated the terms of his parole, not a proceeding designed to punish a criminal defendant for violation of a criminal law. A criminal prosecution is a judicial proceeding that vindicates the community's interests in punishing criminal conduct. Because the two proceedings serve different ends, the finding that the defendant no longer merits parole does not foreclose the criminal justice system from punishing the defendant for that conduct.

[*United States v. Hanahan*, 798 F.2d 187, 189 (7th Cir. 1986)].

Just as revocation of parole is not intended to serve as punishment for the subsequent misconduct that results in the revocation, revocation of supervised release is similarly designed to meet objectives entirely distinct from punishing the subsequent misconduct. Indeed, the Sentencing Commission expressly views violations of the conditions of supervised release[] as a 'breach of trust' and considers 'the sentence imposed upon revocation [of supervised release as] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense.' United States

Sentencing Commission, Guidelines Manual, Ch. 7 Pt. A § 3(b).

*United States v. Wyatt*, 102 F.3d 241, 244-45 (7th Cir. 1996).

In short, Defendant's post-revocation sanction was attributable to his 1995 Conviction. Consequently, the District Court properly included the post-revocation sanction in calculating the criminal history points applicable to Defendant's prior sentence for his 1995 Conviction, correctly resulting in the assessment of three points under U.S.S.G. § 4A1.1(a).[6]

### B.   *Double Jeopardy/Double Counting*

Defendant further contends that the District Court violated the Double Jeopardy Clause by using the same conduct, possession of firearms, to impose multiple punishments under the sentencing guidelines. As Defendant raises this issue for the first time on appeal, we review for plain error. *United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir. 1998).

In asserting a double jeopardy violation, Defendant unsuccessfully attempts to transform what constitutes at most a double counting issue under the sentencing guidelines into a constitutional concern. Although the Constitution prohibits multiple criminal punishments for the same offense, double jeopardy principles generally have no application in the sentencing context "because the determinations at issue do not place a defendant in jeopardy for an 'offense.'" *Monge v. California*, 524 U.S. 721, 728, 118 S.Ct. 2246, 2250 (1998). This rule also applies to sentencing enhancements, which constitute increased penalties for the latest crime, rather than "'a new jeopardy or additional penalty for the earlier crimes.'" *Id.* (quoting *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258 (1948)). Given that double jeopardy concerns are

---

[6]The definition of prior sentence relied upon by Defendant simply does not contemplate situations in which revocation-triggering conduct also serves as the basis for a separate criminal prosecution.

not implicated when, as here, a district court simply applies multiple guidelines to determine the appropriate sentence for an offense of conviction, we find no constitutional violation.[7]

Although framed as a double jeopardy violation, Defendant's argument, fairly understood (particularly after oral argument), really raises issues of possible "double counting" under the sentencing guidelines. In the Sixth Circuit, double counting occurs when "precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999) (citing *United States v. Perkins*, 89 F.3d 303, 310 (6th Cir. 1996)). That being said, not all instances of double counting are impermissible. Indeed, we permit double counting when "it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *Id.* at 194.[8]

Here, Defendant asserts that the District Court improperly used precisely the same conduct -- namely, his possession of firearms -- first as the basis for sentencing him under U.S.S.G. § 2K2.1, second as an enhancement to his base offense level under U.S.S.G. § 2K2.1(a)(2), third as the basis for two criminal history points under U.S.S.G. § 4 A1.1(d), and finally as the basis for three additional criminal history points under U.S.S.G. § 4A1.1(a).

---

[7]The dual sovereignty doctrine forecloses any argument by Defendant that his § 922(g)(1) prosecution by federal authorities and the revocation proceeding by state authorities violates the Double Jeopardy Clause. *See United States v. Louisville Edible Oil Prods., Inc.*, 926 F.2d 584, 587 (6th Cir. 1991); *cf. Wyatt*, 102 F.3d at 245 (holding that "[b]ecause revocation of supervised release amounts only to a modification of the terms of the defendant's original sentence, and does not constitute punishment for the revocation-triggering offense, the Double Jeopardy Clause is not violated by a subsequent prosecution for that offense").

[8]We also note that "[a]bsent an instruction to the contrary, the adjustments from different guideline sections are applied cumulatively (added together)." U.S.S.G. § 1B1.1 cmt. n.4.

A review of these guideline provisions, however, belies Defendant's assertion. While violations of § 922(g)(1) are sentenced under U.S.S.G. § 2K2.1, an enhancement under subsection 2K2.1(a)(2) focuses on Defendant's history of drug offenses, a different aspect of Defendant's conduct than gun possession. Similarly, U.S.S.G. § 4A1.1(d) focuses not on gun possession alone, but on the fact that Defendant violated § 922(g)(1) while under another criminal justice sentence.[9]  Finally, the prior drug convictions for which Defendant received criminal history points under U.S.S.G. § 4A1.1 obviously included conduct other than gun possession. Although some of these points are based on the same drug convictions as Defendant's enhancement under § 2K2.1(a)(2), the guidelines expressly provide that "[p]rior felony conviction(s) resulting in an increased base offense level under subsections . . . (a)(2) . . . are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History)." U.S.S.G. § 2K2.1 cmt. n.15. Indeed, each of the guidelines applied by the District Court either emphasizes different aspects of Defendant's conduct than gun possession alone or involves double counting expressly authorized by the Sentencing Commission. As a result, we find no impermissible double counting and no error, much less plain error, in the District Court's application of the guidelines.

### IV. *CONCLUSION*

For all of the aforementioned reasons, we AFFIRM the sentence imposed by the District Court.

---

[9]Likewise, Defendant's two level enhancement under § 2K2.1(b)(1) emphasizes the *number* of firearms found in Defendant's possession, rather than mere possession.